UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAY VALENTINE,

    Plaintiff,

v.

CITY OF CONCORD, et al.,

    Defendants.

Case No. 16-cv-00279-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 11

## INTRODUCTION

Plaintiff Ray Valentine ("Plaintiff") brings this case against Defendant City of Concord ("Defendant") related to his arrest on July 14, 2013, that involved the use of a police K-9.[1] Pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff filed an Opposition (Dkt. No. 16), and Defendant filed a Reply (Dkt. No. 22). The Court finds this matter suitable for disposition without oral argument and **VACATES** the June 2, 2016 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Defendant's Motion for the following reasons.

## BACKGROUND

On July 14, 2013, Concord Police Officer Matthew Switzer was on patrol with his police K-9 partner, Figo, a large German Shepherd. First Am. Compl. ("FAC") ¶ 7, Dkt. No. 7. Around

---

[1] Plaintiff and Defendant have both consented to the undersigned magistrate judge's jurisdiction. Dkt. Nos. 13, 14. Although Plaintiff also named an individual defendant, Matthew Switzer, he has not been served, and therefore is currently not a party to the suit pursuant to 28 U.S.C. § 636(c). *See Williams v. Oakland Police Dep't*, 2015 WL 5355393, at *1 (N.D. Cal. Sept. 14, 2015); *Levy v. United States*, 2012 WL 1439047, at *1 (N.D. Cal. Apr. 25, 2012).

10:20 p.m., Switzer pulled in behind a Ford pickup and followed it onto Whitman Road. *Id.* ¶¶ 7, 9. Switzer ran the Ford's license plate and found it was registered to Plaintiff's friend, Greg Kushner, from whom Plaintiff had borrowed the vehicle to haul scrap metal. *Id.* ¶¶ 8, 9. Switzer ran Kushner's name in the Department of Motor Vehicles database and learned that Kushner, who was listed as a 32-year-old white male, weighing 240 pounds and standing nearly six feet tall, had outstanding felony warrants. *Id.* ¶ 9. Switzer erroneously determined that Kushner was behind the wheel of the Ford pickup truck and proceeded to tail it. *Id.* In fact, Plaintiff was the sole occupant of the vehicle. *Id.* ¶ 10.

Switzer engaged his police lights, but at first Plaintiff did not notice them. *Id.* ¶¶ 10-11. Eventually, Plaintiff realized Switzer wanted him to stop, and he complied. *Id.* ¶ 13. Plaintiff then exited the Ford pickup truck with his hands up and faced Switzer's cruiser. *Id.* Plaintiff did not attempt to flee. *Id.* Switzer also exited his vehicle and immediately took a defensive position, pointing his gun at Plaintiff's chest. *Id.* ¶ 14. Plaintiff, afraid of getting shot, asked Switzer, "What did I do wrong? Why are you harassing me?" *Id.* Plaintiff kept his hands up. *Id.* Without warning, Switzer reached back and opened his vehicle's side passenger door and blurted out some words. *Id.* ¶ 17. On command, Figo ran out of the vehicle toward Plaintiff and attacked him. *Id.* Plaintiff alleges other Concord police officers also arrived on the scene and began punching him in the face and body during the attack. *Id.* ¶ 18.

Plaintiff was handcuffed and taken to an ambulance and then the hospital, where he underwent emergency surgery to repair some of the damage caused by Figo. *Id.* ¶ 19. The medical reports note that his arms were so battered and lacerated that necrotic muscle tissue could be seen "protruding from the wound." *Id.* Since the incident, Plaintiff walks with a limp, his fingers did not heal properly and look deformed, he has scarring throughout this body, and he no longer has the strength he once had. *Id.* ¶ 20.

Upon his release from the hospital, Plaintiff was remanded to county jail. *Id.* ¶ 21. On October 2, 2013, while still in custody on other grounds, Plaintiff was charged with a misdemeanor criminal complaint of evading a police officer and resisting a peace officer in connection with the events of July 14, 2013. *Id.* ¶ 22. He was also charged with possession of a

controlled substance. *Id.*

On January 17, 2014, Plaintiff was convicted of evading an officer and resisting a peace officer, but found not guilty of possession of a controlled substance. *Id.* ¶ 23. He was sentenced to 110 days in jail, but was given 55 days credit for time already served. *Id.* Plaintiff was released from jail in mid-February 2014. *Id.* ¶ 24. Following his release, Plaintiff became homeless and his medical condition arising from the injuries he sustained on July 14, 2013 worsened. *Id.* ¶ 25. He became critically ill and bedridden and had to undergo further emergency surgery to repair the damage done by the K-9. *Id.* He was also diagnosed with mental health issues stemming from the injuries he sustained on July 14, 2013, including depression and post-traumatic stress disorder ("PTSD"). *Id.*

Plaintiff filed a timely appeal of his conviction. *Id.* ¶ 24. In early 2015, the District Attorney ("D.A.") for Contra Costa County advised the Court of Appeal that the D.A.'s office had become aware of *Brady* evidence regarding a material witness and requested a dismissal of Plaintiff's conviction. *Id.* ¶ 26. Based on that request, in March 2015, the Court of Appeal reversed Plaintiff's conviction and ordered the charges against him be dismissed. *Id.* Plaintiff alleges the D.A.'s office dismissed the charges because Switzer, the chief witness against him, was a drug addict and abused powerful prescription drugs while on duty as a police officer. *Id.* ¶¶ 27-28.

Plaintiff filed his initial Complaint against Switzer and the City of Concord on January 15, 2016. Dkt. No. 1. He filed his First Amended Complaint on March 14, 2016, alleging four causes of action: (1) a claim against Switzer and Does 1-10 under 42 U.S.C. § 1983 for violation of his Fourth Amendment rights; (2) a 42 U.S.C. § 1983 claim against Switzer and Does 1-10 for violation of his Fourteenth Amendment rights; (3) a *Monell* claim against the City of Concord; and (4) a claim against Switzer and Does 1-10 for malicious prosecution under 42 U.S.C. § 1983. *Id.* ¶¶ 30-44.

Defendant filed the present Motion to Dismiss on April 22, 2016. It first argues Plaintiff's claims are all barred by the applicable statute of limitations. Mot. at 1. Even if they are not barred, Defendant argues Plaintiff fails to set forth sufficient facts to support his *Monell* and

malicious prosecution claims. *Id.*

## LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

### A.   Statute of Limitations

Defendant first argues Plaintiff's 42 U.S.C. § 1983 claims must be dismissed because he failed to file his Complaint within two years after the incident took place. Mot. at 5. It notes the incident occurred on July 14, 2013, yet Plaintiff did not file his initial Complaint until January 15, 2016. *Id.* In response, Plaintiff argues he is entitled to tolling because he alleged in his First Amended Complaint that since the July 2013 incident, he "could no longer take care of his affairs" on account of his "mental problems" arising from the K-9 attack, including depression and PTSD. Opp'n at 6.

"In determining the proper statute of limitations for actions brought under 42 U.S.C. § 1983, [courts] look to the statute of limitations for personal injury actions in the forum state." *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *see also Bd. of Regents v. Tomanio*, 446 U.S. 478, 483-84 (1980) ("Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983—a void which is commonplace in federal statutory law. When such a void occurs, this Court has repeatedly 'borrowed' the state law of limitations governing an analogous cause of action."). Under California law, the statute of limitations for personal injury actions is two years. Cal. Civ. Proc. Code § 335.1. Therefore, the statute of limitations for Plaintiff's claims under 42 U.S.C. § 1983 is two years. *Maldonado*, 370 F.3d at 954. Federal law determines when a civil rights claim accrues, *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994), and under that law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action, *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).

Here, because there is no dispute Plaintiff filed his Complaint more than two years after the alleged incident, the Court must determine whether the statute of limitations may be tolled. The appropriate standard for equitable tolling is the standard under California law. *Jones v.*

*Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent an of these laws is inconsistent with federal law."). Equitable tolling "require[s] a showing of three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.'" *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 (2008) (quoting *Addison v. State of Cal.*, 21 Cal. 3d 313, 319 (1978)).

Plaintiff maintains the statute of limitations should be tolled because he lacked the capacity to make decisions during the relevant time period. Opp'n at 5-6. Equitable tolling of a limitations period is appropriate where extraordinary circumstances outside the plaintiff's control made it impossible for him to timely assert his claim. *See Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), *as amended* (Mar. 22, 1999). Mental incapacity and the effect it has upon the ability to file a lawsuit is one such circumstance. *Walker v. Pac. Mar. Assoc.*, 2009 WL 1068886, at *2 (N.D. Cal. Apr. 20, 2009), *aff'd*, 2009 WL 1110821 (N.D. Cal. Apr. 24, 2009); *see also United States v. Brockamp*, 519 U.S. 347, 348 (1997) ("[mental disability], we assume, would permit a court to toll the statutory limitations period"); *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (finding mental incompetence may warrant equitable tolling for the period the prisoner was incompetent if he can show the incompetency in fact caused the filing delay). California Code of Civil Procedure Section 352(a) provides that if a plaintiff is "lacking the legal capacity to make decisions" when his cause of action accrues, the period of his disability is excluded from the time within which the action must be commenced.[2] "This tolling provision has been held applicable to one who is incapable of caring for his or her property or transacting business, or understanding the nature or

---

[2] Prior to 2015, section 352 read that the statute of limitations was tolled during the period of time a person entitled to bring an action was "insane" as opposed to "lacking the legal capacity to make decisions." *See* California Assembly Bill 1847 (2014) ("AB 1847"). "Insane" was previously defined as being "incapable of caring for his property or transacting business or understanding the nature or effects of his acts." *Alcott Rehab. Hosp. v. Superior Court*, 93 Cal. App. 4th 94, 101 (2001). According to AB 1847, this is a technical change to refer to people previously referred to as insane, for instance, as "persons with a mental health disorder or persons who lack legal capacity to make decisions, respectively." AB 1987, Legislative Counsel's Digest. Otherwise, section 352 does not appear to have been substantively changed or altered, and retroactivity is not at issue.

effects of his or her acts." *Flores v. Flores*, 2015 WL 251855, at *3 (E.D. Cal. Jan. 20, 2015), *reconsideration stricken*, 2015 WL 1859051 (E.D. Cal. Apr. 22, 2015) (citing *Tzolov v. Int'l Jet Leasing, Inc.*, 232 Cal. App. 3d 117 (1991)). Whether the doctrine of equitable tolling applies depends on the specific facts of the case. *S.E.C. v. Mercury Interactive LLC*, 2013 WL 567215, at *6 (N.D. Cal. Feb. 13, 2013).

Accepting Plaintiff's allegations as true and construing them in the light most favorable to him, the Court finds Plaintiff has stated a plausible claim showing he is entitled to equitable tolling. After the incident, Plaintiff alleges he was diagnosed with serious mental health issues stemming from the injuries he sustained, including depression and PTSD. FAC ¶ 25. He further alleges he was "prescribed powerful pain and psychiatric medicines," which made him unable to "take care of his affairs and [he] became homeless – living on the streets," until "being moved to a shelter in Concord in late 2015 by a homeless outreach organization." *Id.* At this stage, Plaintiff has put forth enough allegations to establish that he lacked the capacity to make decisions and that his mental incompetence was caused by Defendant's conduct.[3] *See Stoll*, 165 F.3d at 1242 (finding plaintiff's mental incapacity to be an "extraordinary circumstance" and stating that "[defendant] is not entitled to benefit from the fact that its own admittedly outrageous acts left Stoll so broken and damaged that she [could not] protect her own rights."). At a later stage in

---

[3] In support of his Opposition, Plaintiff requested permission to file medical reports under seal, which he claims support a finding that he is entitled to equitable tolling. However, "[a]s a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted). In general, a motion to dismiss made pursuant to Rule 12(b)(6) must be treated as a motion for summary judgment under Rule 56 if either party to the motion to dismiss submits materials outside the pleadings in support of, or opposition to, the motion, and if the court relies on those materials. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, the Court has discretion either to consider or reject such evidence. *Swedberg v. Marotzke*, 339 F.3d 1139, 1143-46 (9th Cir. 2003) (where a district court does not rely on the materials submitted outside the pleadings, a motion to dismiss need not be converted into a motion for summary judgment). If a court converts a motion to dismiss into a motion for summary judgment, the court must give the parties notice and a reasonable opportunity to supplement the record. *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1408 (9th Cir. 1995). Given the relatively early stage of this litigation, the Court exercises its discretion and declines to convert Defendant's Motion into a motion for summary judgment. As noted, the allegations in Plaintiff's FAC establish a plausible claim that he is entitled to tolling, and the Court finds that the evidence submitted by Plaintiff is more appropriately considered after the parties have had an adequate opportunity to fully develop the factual record. Accordingly, Plaintiff's request to file the records under seal is DENIED WITHOUT PREJUDICE.

these proceedings, Defendant may be able to establish that the facts in this case do not establish a mental disability of sufficient severity to permit tolling on this basis. However, the Ninth Circuit has explained that "because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)).

Finally, the Court notes "the equitable tolling doctrine fosters the policy of the law of this state which favors avoiding forfeitures and allowing good faith litigants their day in court." *Addison*, 21 Cal. 3d at 321. There is no indication Plaintiff acted in bad faith and, given the facts of the present case and the policy driving California law, equitable tolling is appropriate. The Court therefore DENIES Defendant's Motion to Dismiss based on the statute of limitations.

## B.  *Monell* Liability

Assuming Plaintiff adequately alleges enough facts to support a constitutional violation, Defendant argues his *Monell* claim is still fatally deficient because he does not plead a policy or custom within the Concord Police Department or City of Concord that condones civil rights violations. Mot. at 7. It further argues Plaintiff has not pleaded that any such policy or custom was the motivating force behind Switzer's actions. *Id.* In response, Plaintiff maintains his *Monell* claim is sufficient because he alleges Defendant's "(i) failure to 'have, implement, train and/or supervise officers . . . regarding the use of police K-9s', (ii) 'condoning a custom and practice of unconstitutional use of police K-9s in the field', and (iii) 'failing to have a proper drug testing/screening program for its officers to ensure that officers[, such as defendant Switzer who was later arrested himself for stealing and abusing prescription medicines,] were not intoxicated or abusing [] drugs when executing their duties.'" Opp'n at 8 (quoting FAC ¶ 37).

### 1.  Legal Standard

42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983 is not itself a source of substantive rights, but merely provides a vehicle for a plaintiff to bring federal statutory or constitutional challenges to actions by state

and local officials. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Instead, a municipality is liable only if the individual can establish that the municipality "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he [or she] suffered." *Id.* at 694-95; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *Galen v. Cty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007). To hold a public entity liable, a plaintiff must demonstrate that the unlawful governmental action was part of the public entity's policy or custom, and that there is a nexus between the specific policy or custom and the plaintiff's injury. *Monell*, 436 U.S. at 690-92, 694-95.

"In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.'" *Bedford v. City of Hayward*, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012) (quoting *Warner v. Cty. of San Diego*, 2011 WL 662993, *4 (S.D. Cal. Feb. 14, 2011)); *see also AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (holding that *Twombly* and *Iqbal* pleading standard also applies to *Monell* claims). Prior to *Twombly* and *Iqbal*, the Ninth Circuit had held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that individual officers' conduct conformed to official policy, custom, or practice." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). However, such conclusory allegations no longer suffice and a plaintiff is required to state facts sufficient "to state a claim that is plausible on its face." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 547).

2. Application to the Case at Bar

Applying these principles to the facts of this case, the Court finds Plaintiff has stated a plausible claim for *Monell* liability under § 1983. As noted above, Plaintiff alleges Defendant failed to adequately train and supervise officers regarding the use of police K-9s. FAC ¶ 37. The Supreme Court has held that inadequate training may constitute a "policy" under *Monell* that gives rise to municipal liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1988); *Long v. Cty.*

*of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long*, 442 F.3d at 1186. A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *Lee*, 250 F.3d at 681. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389; *Long v. City & Cty. of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007).

A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390; *Lee*, 250 F.3d at 682. A "pattern of tortious conduct," despite the existence of a training program, or "highly predictable" constitutional violations due to a "failure to equip law enforcement officers with specific tools to handle recurring situations," are circumstances in which liability for failure to train may be imposed. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407-10 (1997); *Long*, 442 F.3d at 1186-87. However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *City of Canton*, 489 U.S. at 391; *Merritt v. Cty. of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989); *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000).

Plaintiff alleges a single, isolated alleged constitutional violation, i.e., the July 14, 2013 K-9 attack. In general, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*. . . ." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("The custom must be so persistent and

10

widespread that it constitutes a permanent and well settled city policy. . . .   Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." (internal quotations omitted)); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.").

However, although Plaintiff focuses on Switzer's actions, the language of his FAC applies to all individuals that are trained regarding the use of police K-9s.  Plaintiff does not allege that these policies applied only to Switzer; instead, he maintains they apply to all officers.  FAC ¶ 37.  Such allegations can constitute a plausible claim.  In *Dasovich v. Contra Costa County Sheriff Department*, the plaintiff alleged the county defendant "developed and maintained training policies that led to the improper use of canines by individual officers, including the release of canines to bite on individuals when it is not objectively reasonable to do so."  2014 WL 4652118, at *5 (N.D. Cal. Sept. 17, 2014) (internal quotations and citation omitted).  Although he made this allegation generally, his allegations focused solely on the training of an individual deputy.  *Id.* Still, the court allowed the plaintiff's *Monell* claim to proceed, finding "the language of Plaintiff's FAC can be interpreted to apply to all individuals that are trained using said policies." *Id.* Although a single incident is ultimately insufficient to establish liability, a plaintiff can survive a motion to dismiss by stating a plausible *Monell* claim based on failure to train, so long as the allegations apply to all individuals that are trained using the policy at issue.  *Id.*  Thus, under the liberal pleading standard of Rule 8(a)(2) and drawing the reasonable inference that Defendant is liable for the misconduct alleged, the Court finds the First Amended Complaint contains sufficient allegations to give fair notice to Defendant and to enable it to defend against the allegations effectively.

Accordingly, the Court DENIES Defendant's Motion on this ground.

**C.    Malicious Prosecution**

Plaintiff brings his malicious prosecution cause of action against Switzer and "DOE

11

1 Defendants." He alleges Switzer instituted a criminal action against him and goes on to state that

2 Switzer "Maliciously pursu[ed] criminal charges for which defendants lacked any evidence."

3 FAC ¶¶ 38, 42. Defendant argues this claim must be dismissed because Plaintiff does not allege

4 facts that Switzer had influence as to whether the District Attorney filed a criminal complaint.

5 Mot. at 10. It maintains Plaintiff would have to allege facts to support his claim that Switzer

6 initiated against him or directed that charges be brought against, and even if Plaintiff alleged any

7 facts to support this, he would be "unable to prove it because the D.A. independently chooses who

8 to file charges against without any input or direction from any of the officers involved." *Id.*

9 Because Plaintiff does not allege facts showing Switzer or any other officer had any influence as

10 to whether the D.A. took action against him, Defendant argues this claim fails as a matter of law.

11 *Id.*

12 In response, Plaintiff argues he has alleged a plausible claim because he alleges

> (i) that he was initially arrested on a felony warrant even though he did not resemble the suspect in any way (i.e., he was stopped without probable cause), FAC ¶¶ 8-13, and 15; (ii) that he was arrested of evading an officer even though he did not run away from Officer Switzer (i.e., again no probable cause), FAC ¶ 16; (iii) the criminal charges against plaintiff were ultimately dismissed, FAC ¶ 26; (iv) that defendants maliciously withheld exculpatory evidence from him at his trial – namely that Officer Switzer was a drug addict, FAC ¶ 26-27, and 41; (v) that plaintiff was sentenced to 110 days in jail as a result of his prosecution, FAC ¶ 23; and (vi) has brought this claim against all defendants, including the arresting officer who caused the charges to be filed against plaintiff, FAC ¶ 39.

20 Opp'n at 9.

21 Under § 1983, a "criminal defendant may maintain a malicious prosecution claim not only

22 against prosecutors but also against others—including police officers and investigators—who

23 wrongfully caused his prosecution." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011); *Awabdy*

24 *v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). To prevail on a claim for malicious

25 prosecution under § 1983, a plaintiff must prove the defendants prosecuted him (1) with malice,

26 (2) without probable cause, (3) for the purpose of denying him equal protection or another specific

27 constitutional right, and (4) that institution of criminal proceedings have terminated in favor of the

28 accused. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 919 (9th Cir. 2012). Further, "[a]n individual

seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence." *Awabdy*, 368 F.3d at 1068. To constitute a favorable termination, "a dismissal in the interests of justice [must] reflect[ ] the opinion of the prosecuting party or the court that the action lacked merit or would result in a decision in favor of the defendant." *Id.*

"Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Id.* at 1067 (internal citation omitted). However, the presumption of prosecutorial independence does not preclude a § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings. *Id.*; *Blankenhorn*, 485 F.3d at 482-83 (holding that a district attorney's reliance on false statements are sufficient to state a § 1983 claim).

As an initial matter, the Court notes that the presumption of prosecutorial independent judgment is an evidentiary presumption that is applicable at the summary judgment stage to direct the order of proof; "it is not a pleading requirement to be applied to a motion to dismiss, before discovery has taken place." *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). With this in mind, the Court finds the allegations in the First Amended Complaint are sufficient to withstand Defendant's Motion to Dismiss. Plaintiff alleges he was initially stopped without probable cause and arrested on a felony warrant even though he did not resemble the suspect in any way (FAC ¶¶ 8-13, 15); he was arrested for evading an officer without probable cause as he did not run away from Switzer (*id.* ¶ 16); the criminal charges against him were ultimately dismissed (*id.* ¶ 26); one or more defendants maliciously withheld exculpatory evidence from him at his trial (*id.* ¶¶ 26-27, 41); and he has brought this claim against all defendants, including Switzer, who caused the charges to be filed against him (*id.* ¶ 39). If established, these allegations rebut the presumption of prosecutorial independence. *See Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 945 (N.D. Cal. 2014) (finding plaintiff rebutted presumption where he alleged

officers violated his Fourth Amendment rights by arresting him without probable cause and providing the prosecutor with false information, while knowing there was not even a reasonable basis for bringing the charges).

Finally, the allegations give Defendant fair notice of what the claim is and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (holding that under Rule 8(a), "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests."); *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987) (finding allegations sufficient to state a malicious prosecution claim under § 1983 where plaintiff alleged the defendants illegally arrested him, contrived charges to justify the arrest, submitted false police reports, initiated his criminal prosecution in bad faith, and the criminal proceeding terminated in his favor).

Accordingly, for the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's malicious prosecution claim is DENIED.

## CONCLUSION

Based on the analysis above, the Court **DENIES** Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: May 16, 2016

MARIA-ELENA JAMES
United States Magistrate Judge